**OXYGENATED FUELS ASSOCIATION, INC.,**
Plaintiff,

v.

Gray **DAVIS**, in his capacity as Governor of the State of California, and Alan C. Lloyd, in his capacity as Chairman of the California Air Resources Board, Defendants.

No. CIVS010156DFLGGH.

United States District Court, E.D. California.

Sept. 5, 2001.

Rebecca Michelle Ceniceros, Esq., Livingston and Mattesich, Sacramento, Geraldine Edens, Esq., Cadwalader, Wickersham and Paft, Washington, DC, for Plaintiff.

Marc N. Melnick, Esq., Deputy Attorney General, California Department of Justice, Oakland, Russell B. Hildreth, Esq., Deputy Attorney General, Sacramento, CA, for Defendants.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

Plaintiff Oxygenated Fuels Association, Inc. ("OFA") is a trade association whose members include the major producers of methyl tertiary-butyl ether ("MTBE"), an oxygenate used in gasoline. In this action, OFA challenges a California regulation that bans the use of MTBE in California gasoline starting December 31, 2002 ("the California MTBE ban" or "the MTBE ban"). OFA claims that the California MTBE ban is preempted by the Clean Air Act ("the Act"), 42 U.S.C. § 7401 et seq., and also violates the Commerce Clause. OFA seeks declaratory and injunctive relief. Defendants Governor Gray Davis and Allan Lloyd, Chairman of the California Air Resources Board, (collectively "the

State" or "California") move to dismiss on the ground that Congress authorized California to set its own course in air quality regulation, and therefore that the MTBE ban is neither preempted by the Clean Air Act nor prohibited by the Commerce Clause.

## I.

The goal of the Clean Air Act is to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). The Act directs the Administrator of the United States Environmental Protection Agency ("EPA") to set National Ambient Air Quality Standards ("NAAQS"). 42 U.S.C. § 7409. The states have the responsibility and authority to enact specific State Implementation Plans to meet the NAAQS. *Id.* at § 7410(a). These State Implementation Plans must be approved by the EPA. *Id.* at § 7410(k). In California, responsibility for the development of the State Implementation Plan is shared between the California Air Resources Board and local air pollution control districts. Cal. Health & Safety Code §§ 39002, 39500, 40000.

The Clean Air Act authorizes the EPA to regulate fuels and fuel emissions. *See* 42 U.S.C. § 7545. The Act requires that fuels and fuel additives be registered with the EPA. *Id.* at § 7545(b). The EPA may control or prohibit particular fuels or fuel additives. *Id.* at § 7545(c). The EPA's discretion to control or prohibit a fuel or fuel additive is guided by statutory standards set out in § 7545(c). For example, the EPA must consider "all relevant medical and scientific evidence available ..., including consideration of other technologically or economically feasible means of achieving emission standards" before imposing a prohibition. *Id.* at § 7545(c)(2)(A). Similarly, the EPA may not impose a fuel control without performing a cost benefit analysis, § 7545(c)(2)(B), and no fuel or fuel additive may be prohibited unless the EPA finds that the prohibition "will not cause the use of any other fuel or fuel additive which will produce emissions which will endanger the public health or welfare to the same or greater degree ...." *Id.* at § 7545(c)(2)(C).

The Act includes an express preemption provision that prohibits the states from imposing any control or prohibition of motor vehicle fuels and fuel additives "for purposes of motor vehicle emission control." *Id.* at § 7545(c)(4)(A).[1] However, there are two key exceptions to this general statutory preemption of state regulation of fuels and fuel additives. First, the Act permits California, as a state that regulated automotive emissions before Congress entered the field, to "at any time prescribe and enforce, for the purpose of motor vehicle emission control, a control or prohibition respecting any fuel or fuel additive." *Id.* at § 7545(c)(4)(B).[2] This broad grant

---

1. Section 7545(c)(4)(a) provides that:

   [N]o State (or political subdivision thereof) may prescribe or attempt to enforce, for purposes of motor vehicle emission control, any control or prohibition respecting any characteristic or component of a fuel or fuel additive in a motor vehicle or motor vehicle engine—
   (i) if the Administrator has found that no control or prohibition of the characteristic or component of a fuel or fuel additive under paragraph (1) is necessary and has published his finding in the Federal Register, or
   (ii) if the Administrator has prescribed under paragraph (1) a control or prohibition applicable to such characteristic or component of a fuel or fuel additive, unless State prohibition or control is identical to the prohibition or control prescribed by the Administrator.

2. Section 7545(c)(4)(B) does not exempt California by name from § 7545(c)(4)(A)'s general statement of federal preemption. Instead, it

of authority is unqualified by any of the requirements in § 7545(c) imposed upon the EPA before it controls or prescribes any fuel and, in this respect, California has a freer hand than the EPA. Second, as part of a State Implementation Plan, a state may prescribe a fuel standard if the EPA Administrator determines that the regulation is necessary to achieve an air quality standard. *Id.* at § 7545(c)(4)(C).

In 1990, Congress enacted a reformulated gasoline program to address ozone pollution in areas that had failed to meet the NAAQS for ground-level ozone. *Id.* at § 7545(k). Reformulated gasoline is gasoline to which oxygenates such as MTBE or ethanol have been added for the purpose of reducing ozone-causing emissions. The reformulated gasoline program requires ozone non-attainment areas to use only reformulated gasoline. *Id.* at § 7545(k)(5). Other areas are permitted to opt into the program. *Id.* at § 7545(k)(6). In California, the reformulated gasoline program applies to Los Angeles, San Diego, and Sacramento. *See* Regulation of Fuel and Fuel Additives: Extension of California Enforcement Exemptions for Reformulated Gasoline Beyond December 31, 1999, 64 Fed.Reg. 49,992, 49,993 (Sept. 15, 1999).

Section 7545(k) directs the EPA Administrator to promulgate regulations for reformulated gasoline, including a requirement that it contain at least two percent oxygen by weight. *Id.* at § 7545(k)(2)-(3).

Although California reformulated gasoline is exempt from many of the federal enforcement and reporting requirements, *see* 40 C.F.R. §§ 80.40–80.83, the State is bound by the mandatory federal reformulated gasoline standards, including the minimum oxygen requirement. *See* Extension of California Enforcement Exemptions, 64 Fed.Reg. at 49,993.

In addition to ozone, the 1990 Amendments to the Clean Air Act set additional fuel requirements for areas that have not met air quality standards for carbon monoxide. Section 7545(m) directs states with carbon monoxide non-attainment areas to submit State Implementation Plans requiring gasoline sold in the Winter months in those areas to include "not less than 2.7 percent oxygen by weight." *Id.* at § 7545(m)(1)-(2). The EPA Administrator can waive the minimum oxygen content requirement of this section in certain circumstances, such as where the oxygen content provision would prevent or interfere with a state's attainment of a NAAQS. *Id.* at § 7545(m)(3).

MTBE is a synthetic chemical manufactured from isobutylene and methanol, and is used as an oxygenate in at least 15 states. (Complaint at ¶¶ 14, 16). On December 9, 1999, the California Air Resources Board approved amendments to its reformulated gasoline regulations banning MTBE because of a concern that

---

provides that the exemption applies to "[a]ny State for which application of [42 U.S.C. § 7543(a)] has at any time been waived under [42 U.S.C. § 7543(b)]." *Id.* at § 7545(c)(4)(B). Section 7543(b) permits the EPA Administrator to waive application of § 7543(a)'s prohibition of state regulation of automobile emissions for any state that regulated automotive emissions prior to March 30, 1966. *See id.* at § 7543(a)-(b). California is the only state that regulated automotive emissions prior to March 30, 1996. Thus, it is the only state that is eligible for such a waiver. *See Motor & Equip. Mfrs. Ass'n v. EPA,* 627

F.2d 1095, 1100 n. 1 (D.C.Cir.1979). Because California has been granted numerous waivers from the EPA Administrator for its emissions programs, it is exempt from federal preemption of state regulations of fuel standards under § 7545(c)(4)(B). *See American Auto. Mfrs. Ass'n v. Comm'r,* 31 F.3d 18, 21 (1st Cir.1994) ("[Section 7545] authorizes EPA to regulate motor fuels and preempts any unapproved state regulations, except for California, which may enact fuel standards without EPA approval.") OFA does not dispute that California is exempt from § 7545(c)(4)(A).

MTBE was contaminating the State's groundwater: "Starting December 31, 2002, no person shall sell, offer for sale, supply or offer for supply California gasoline which has been produced with the use of [MTBE]." Cal.Code Regs. tit. 13 § 2262.6(a)(1). For gasoline that has already been supplied from a refinery, the MTBE ban is phased in over the first quarter of 2003. *See id.* at § 2262.6(b).

Plaintiff OFA filed the present complaint on May 4, 2001, seeking a declaratory judgment that the California MTBE ban (1) is preempted because Congress intended the Clean Air Act to occupy the field with regard to the regulation of oxygenated gasoline content; (2) is preempted because it conflicts with Congress's purposes and objectives in enacting the Clean Air Act; (3) is expressly preempted by the EPA's reformulated gasoline rule and (4) violates the dormant Commerce Clause.

## II.

■ At the outset, OFA claims that Congress's grant of authority to California to enact its own fuels regulations under § 7545(c)(4)(B) does not apply to the MTBE ban. OFA argues that the California ban was enacted not "for the purpose of motor vehicle emission control," but to prevent contamination of the State's groundwater.[3] This seems an unduly narrow interpretation of the State's authority under the generous terms of the authorization to "at any time prescribe and enforce ... a control or prohibition respecting any fuel or fuel additive." As a matter of linguistics, the MTBE ban, standing on its own, can be viewed as a water quality

regulation and thus not "for the purpose of motor vehicle emission control." But the ban does not stand on its own. It is part of an overall approach to emissions control that permits some oxygenates, for the purpose of motor vehicle emission control, but not this particular one. By banning one additive, other additives are promoted for the purpose of emission control. The ban reflects the Air Resources Board's determination that "for the purpose of motor vehicle emission control" MTBE is not necessary or desirable but that other oxygenates are and will best fulfill State and federal emission control goals.

In short, in choosing which fuels to regulate, which to ban and which to prefer, the State may often have a number of different goals and purposes under the overall umbrella of emission control. The language of the regulatory authorization in § 7545(c)(4)(B) does not suggest that California may only act to ban a fuel if its sole purpose is emission control. OFA's restrictive construction of California's authority to regulate fuels appears inconsistent with the broad authority granted to California in § 7545(c)(4)(B) of the Act.[4]

■ Once § 7545(c)(4)(B) is understood to permit California to enact the MTBE ban, very little is left to OFA's preemption claims. The express preemption argument fails because the statutory preemption provision is qualified by the unrestricted grant of authority to California. OFA argues that § 7545(c)(4)(B) leaves California "free to chart its own course with regard to fuel regulations, but only so long as that course includes regula-

---

**3.** OFA did not brief this position, but offered it for the first time as an alternative theory at oral argument. *See Oxygenated Fuels Ass'n, Inc. v. Pataki,* 158 F.Supp.2d 248, 253–254 (N.D.N.Y.2001).

**4.** Further, because the Act's preemption provision preempts state controls that are "for

purposes of motor vehicle emission control," OFA's interpretation of the reach of the preemption provisions of § 7545(c)(4) would greatly limit the Act's general preemption of state regulations to a similarly narrow range of controls or prohibitions of fuels and fuel additives.

tions more stringent than the federal counterparts." (*Opp.* at 23–24). But OFA's "more stringent" gloss appears nowhere in the language of the statute. On the contrary, § 7545(c)(4)(B) permits California "at any time [to] prescribe and enforce ... a control or prohibition respecting any fuel or fuel additive." Several courts have noted that this provision allows California to regulate fuels without EPA approval. *See Motor Vehicle Mfrs. Ass'n v. New York State Dep't of Envtl. Conservation,* 79 F.3d 1298, 1302 (2nd Cir.1996); *American Auto. Mfrs. Ass'n,* 31 F.3d at 21. Neither does the EPA's authority to set national standards for reformulated gasoline in § 7545(k) affect California's general right to regulate fuels. The national standards do not require the use of any particular oxygenate. *See* Regulation of Fuel and Fuel Additives: Standards for Reformulated and Conventional Gasoline, 59 Fed.Reg. 7,716, 7,809 (Sept. 15, 1999). For these reasons, OFA's express preemption claim will be dismissed.

OFA's implied preemption claims also wither under the glare of § 7545(c)(4)(B).[5] Not only must OFA overcome a "starting presumption that Congress does not intend to supplant state law," *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995), but it is here faced with a statutory grant of authority to California that expressly permits the State to legislate in the field of fuels regulation. It is not Congress's "clear and manifest purpose" to preempt the field where California is concerned, just the opposite.

OFA's claim that the California MTBE ban conflicts with Congress's intent to grant the EPA the exclusive authority to certify and regulate fuels and to leave the choice of oxygenates to the marketplace to protect the national price and supply of gasoline is similarly untenable in light of § 7545(c)(4)(B). The argument founders from the very beginning. Because California has the unrestricted authority to impose controls or prohibitions respecting any fuel or additive, it cannot be said that the EPA has exclusive authority. Moreover, the EPA does not take the position that its authority to waive fuels into commerce under § 7545(f) and to control or prohibit fuels under § 7545(c)(1)-(2) is an additional basis for the preemption of state fuel controls not otherwise preempted under § 7545(c)(4). *See Approval and Promulgation of Implementation Plans; Nevada SIP Revision, Clark County,* 64 Fed. Reg. 29,573, 29,579 (June 2, 1999). The agency's interpretation of a statute it administers is entitled to deference. Finally, the Clean Air Act does not require that MTBE be made available to refiners, nor does it direct California or the states more generally to consider the national price and supply of gasoline.[6]

In short, there is no "actual conflict" here between the California ban and the federal regulatory scheme. *See English v. Gen. Elec. Co.,* 496 U.S. 72, 90, 110 S.Ct. 2270, 2280, 110 L.Ed.2d 65 (1990). The possible effect of the MTBE ban on the national price and supply of reformulated gasoline is too remote a consideration to support a preemption finding, given that

---

**5.** "State action may be foreclosed ... by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment." *Lorillard Tobacco Co. v. Reilly,* 533 U.S. ——, 121 S.Ct. 2404, 2414, 150 L.Ed.2d 532 (2001) (citations omitted).

**6.** Only the EPA Administrator is directed to "tak[e] into consideration the cost of achieving such emission reductions, any nonair-quality and other air-quality related health and environmental impacts and energy requirements." 42 U.S.C. § 7545(k)(1).

Congress expressly granted California the authority to control or prohibit fuel additives. *See Hillsborough County v. Automated Med. Labs., Inc.,* 471 U.S. 707, 720–21, 105 S.Ct. 2371, 2378–79, 85 L.Ed.2d 714 (1985) (holding that claim that local ordinances that blood donors be tested for hepatitis, donate at only one plasma center, and take a breath-analysis test conflicted with federal goal of ensuring an adequate supply of plasma was "too speculative to support preemption").

### III.

Even if OFA were correct that neither the general federal preemption of state fuel regulations in § 7545(c)(4)(A) nor California's exemption from federal preemption in § 7545(c)(4)(B) applied to the present case—because the MTBE ban is not "for the purpose of motor vehicle emission control"—its claim that the ban is preempted because it conflicts with the federal reformulated gasoline scheme would still fail. "The States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 756, 105 S.Ct. 2380, 2397, 85 L.Ed.2d 728 (1985) (citations and internal quotations omitted). Preemption analysis must begin with the presumption that the federal statute at issue has not preempted the State's exercise of its police powers. *Exxon Mobil Corp. v. EPA,* 217 F.3d 1246, 1255 (9th Cir.2000). As noted in part II, above, OFA's argument that the MTBE ban conflicts with Congress's goal of ensuring oxygenate neutrality finds little support in the present statutory scheme. At best, the statute neither requires nor forbids the use of any particular oxygenate. Its "goal" is to assure a particular oxygen content. It would require a far greater showing on OFA's part for the court to invalidate the State's enactment of a measure taken under its police powers to protect the environment and the public health.

### IV.

OFA's fourth claim is that the California MTBE ban violates the dormant Commerce Clause.

[T]he Commerce Clause ... is in its negative aspect ... a limitation on the regulatory authority of the states. Thus, although a state has power to regulate commercial matters of local concern, a state's regulations violate the Commerce Clause if they are discriminatory in nature or impose an undue burden on interstate commerce.

*Shamrock Farms Co. v. Veneman,* 146 F.3d 1177, 1179 (9th Cir.1998) (citations and internal quotations omitted). "Where state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce." *White v. Massachusetts Council of Constr. Employers, Inc.,* 460 U.S. 204, 213, 103 S.Ct. 1042, 1047, 75 L.Ed.2d 1 (1983). Because Congress has specifically authorized California to enact prohibitions and controls respecting fuels and fuel additives under § 7545(c)(4)(A), the State's MTBE ban is not prohibited by the Commerce Clause.

### V.

The State's motion to dismiss is GRANTED.

IT IS SO ORDERED.